**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

JUL - 8 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

NTP, INC.,                              )
          **Plaintiff,**              )
                          )
**v.**                                    )
                          )
**HIGH TECH COMPUTER CORP.,**            )
**a/k/a HTC CORP., HTC (B.V.I.),**       )
**HTC AMERICA, INC., EXEDEA,**           )
**INC.**                                 )
          **Defendants.**

Civil Action No.:  3:10cv472(JRS)

Jury Trial Demanded

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NTP, Inc. ("NTP" or "Plaintiff"), by and through its attorneys, hereby demands

a jury trial and complains of High Tech Computer Corp., a/k/a HTC Corp. ("HTC Corp."), HTC

(B.V.I.) Corp. ("HTC BVI"), HTC America, Inc. ("HTC America"), and Exedea, Inc.

("Exedea") (collectively "HTC" or "Defendants), as follows:

### A.     Nature of the Action

1.  This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. §§ 271 *et seq.*, to enjoin infringement and obtain damages resulting from

Defendants' unauthorized manufacture, use, sale, offer to sell and/or importation into the United

States certain products, methods, processes, services and/or systems that infringe one or more

claims of United States Patent No. 5,436,960 (the "'960 Patent") (attached as Exhibit A) entitled

"Electronic Mail System with RF Communications to Mobile Processors and Method of

Operation Thereof;" United States Patent No. 5,438,611 (the "'611 Patent") (attached as

Exhibit B) entitled "Electronic Mail System with RF Communications to Mobile Processors

Originating From Outside of the Electronic Mail System and Method of Operation Thereof;"
United States Patent No. 5,625,670 (the "'670 Patent") (attached as Exhibit C) entitled
"Electronic Mail System With RF Communications to Mobile Processors;" United States Patent
No. 5,819,172 (the "'172 Patent") (attached as Exhibit D) entitled "Electronic Mail System with
RF Communications to Mobile Radios;" United States Patent No. 6,067,451 (the "'451 Patent")
(attached as Exhibit E) entitled "Electronic Mail System with RF Communications to Mobile
Processors;" United States Patent No. 6,317,592 (the "'592 Patent") (attached as Exhibit F)
entitled "Electronic Mail System with RF Communications to Mobile Processors;" U.S. Patent
No. 5,479,472 (the "'472 Patent") (attached as Exhibit G) entitled "System for Interconnecting
Electronic Mail Systems by RF Communications and Method of Operation Thereof;" and U.S.
Patent No. 5,631,946 (the "'946 Patent") (attached as Exhibit H) entitled "System of
Transferring Information from a RF Receiver to a Processor under Control of a Program Stored
by the Processor and Method of Operation Thereof" (collectively, "the Campana Patents or "the
patents-in-suit").

### B. The Parties

2. Plaintiff NTP is a company organized and existing under the laws of the
Commonwealth of Virginia, and has its business address at 16381 Locust Hill Drive, Rockville,
Virginia 23146.

3. Plaintiff NTP is the lawful assignee of all right, title and interest in and to the patents-
in-suit.

4. Defendant HTC Corp. is a corporation organized and existing under the laws of
Taiwan, with its principal place of business at 23 Xinghau Road, Taoyuan 330, Taiwan, Republic
of China. Upon information and belief, Defendant is engaged in the design, manufacture,

importation into the United States, and sale after importation of mobile communication devices and services.

5.  Upon information and believe, Defendant HTC BVI is a wholly-owned subsidiary of Defendant HTC Corp. and is incorporated under the laws of the British Virgin Islands with its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands.  Upon information and belief, Defendant HTC BVI is engaged in global investing and related activities on behalf of its parent, Defendant HTC Corp. and is itself a parent company of additional Defendants.

6.  Upon information and belief, Defendant HTC America is a wholly-owned subsidiary of Defendant BVI and is incorporated under the laws of the state of Texas, with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005.  Upon information and belief, Defendant HTC America performs several services to support the importation and sale of mobile communication devices produced by HTC Corp. into and within the United States, including marketing, repair, and after-sale services of mobile communication devices.

7.  Upon information and belief, Defendant Exedea is a wholly-owned subsidiary of Defendant HTC BVI and is incorporated under the laws of the state of Texas with its principal place of business at 5950 Corporate Drive, Houston, Texas 77036.  Upon information and belief, Defendant Exedea imports mobile communications devices produced by HTC Corp. into the United States and distributes and sells such mobile communication devices after their importation.

8.  Upon information and belief, Defendants created software for various smartphones, such as TouchFlo, which along with various operating systems (such as Windows Mobile and

- 3 -

Android), allows users to send and receive email communications via an RF transmission network.

9.   Defendants market smartphones to consumers via the HTC website at http://www.shopamerica.htc.com/homebrands/index.htm.

10. Microsoft Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052. Upon information and belief, HTC has developed the majority of the smartphones running the Windows Mobile operating system since 2001.

11. Upon information and belief, HTC collaborated directly with Microsoft in creating numerous Windows Mobile smartphones including, but not limited to, the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Sprint HTC Touch Diamond ™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the T-Mobile HTC Wing smartphone, and the T-Mobile HTC Dash.

12. HTC makes, uses, offers to sell, or sells infringing smartphones especially adapted for use with software applications and electronic mail systems manufactured and sold by third parties, including but not limited to, the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap smartphone, the Verizon HTC Touch Pro™ smartphone, the

Sprint HTC Touch Pro™ smartphone, the Sprint HTC Touch Diamond ™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the T-Mobile HTC Wing smartphone, the T-Mobile HTC Dash smartphone, the T-Mobile G1 smartphone, and the Google Nexus One smartphone.

13. Defendants co-developed the T-Mobile G1™ smartphone with Google, which was released for sale in 2008.

14. Defendants co-developed the Google Nexus One smartphone, which was released for sale in 2010.

15. Defendants have conducted business in the Commonwealth of Virginia, by among other things, committing acts that constitute infringement of the patents-in-suit.

**C.     Jurisdiction and Venue**

16. This Court has jurisdiction over the subject matter of this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

17. This Court has personal jurisdiction over the Defendants because the Defendants conduct business in this judicial district, and has committed acts of infringement in this Judicial District, including knowingly and actively contributing to and inducing others to commit such acts of infringement in this Judicial District.  Defendants directly and/or indirectly manufacture, assemble and/or import products that are and have been offered for sale, sold, purchases, and used within this Judicial District.

18. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b) and Local Rule 3(C) because, among other things, Defendants manufacture and distribute products that are offered for sale, sold, purchased, and used within the Richmond Division.  Defendants have also

committed tortious acts of patent infringement in this Judicial District, rendering it subject to personal jurisdiction.

### D.    Factual Background

#### 1.    Mr. Campana Invented Wireless Email.

19. Generally, the patents-in-suit relate to an innovative vision by a brilliant inventor, Thomas Campana, to integrate two distinct technologies: electronic mail and wireless networks. Mr. Campana invented unique technologies that enable a user to receive and view an email message from a wireless mobile device, without needing to connect to his wireline personal desktop computer.

20. In 1971, Mr. Campana founded ESA Telecom Systems, a wireless engineering consulting firm, and spent the next 20 years helping companies develop their paging networks. By 1990, Campana was recognized as a trusted provider of advanced wireless solutions in the telecommunications industry.  For example, from 1986 to 1991 Campana acted as Vice President of Engineering for Telefind Corporation.  At a time when pager networks were local operations more akin to independent, regional radio stations than the giant service providers we have today, Campana was working with Telefind to develop one of the very first national networks capable of transmitting alphanumeric pages anywhere in the country.  Telefind's paging technology was so sophisticated and ground breaking that it prompted a number of inquiries regarding potential acquisition by major telecommunications carriers both in the U.S. and abroad.

21. The visionary work of Mr. Campana occurred at a time when digital cellular telephone networks were a relatively new concept.  At that time, there were no systems for sending emails to or from mobile devices.  In fact, the concept of email itself was still a relatively new concept that only became popularized with the arrival of large online service providers such as America Online.

- 6 -

22. Realizing that email and wireless technologies were ripe for combination, in the summer of 1990, Mr. Campana began to develop a wireless email system that garnered the attention of AT&T. At AT&T's request, Mr. Campana built a working model that specifically interfaced with AT&T's newly designed line of portable computers. Mr. Campana and his employees demonstrated the system to AT&T in October, 1990 and then to AT&T's most valued customers at an industry tradeshow the following month. The demonstration consisted of sending an email through the AT&T email system to a portable AT&T Safari computer capable of sending and receiving emails wirelessly via a modem that had been specially programmed for that purpose. Based on this technology, Mr. Campana filed a series of applications with the PTO that eventually issued as the patents-in-suit.

23. Although Mr. Campana's company eventually failed, Mr. Campana's vanguard technology described and claimed in the patents-in-suit has been adopted worldwide. Moreover, many current industry leaders have recognized the value of the technology and have licensed the patents-in-suit.

24. The '611 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors Originating From Outside Of The Electronic Mail System And Method Of Operation Thereof," issued on August 1, 1995. The inventors of the '611 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '611 patent is now, and has been at all times since its date of issue, valid and enforceable.

25. The '472 patent, entitled "System For Interconnecting Electronic Mail Systems By RF Communications And Method Of Operation Thereof," issued on December 26, 1995. The inventors of the '472 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F.

Thelen. The '472 patent is now, and has been at all times since its date of issue, valid and enforceable.

26. The '960 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors And Method Of Operation Thereof," issued on July 25, 1995. The inventors of the '960 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '960 patent is now, and has been at all times since its date of issue, valid and enforceable.

27. The '670 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on April 29, 1997. The inventors of the '670 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '670 patent is now, and has been at all times since its date of issue, valid and enforceable.

28. The '172 patent, entitled "Electronic Mail System With RF Communications To Mobile Radios," issued on October 6, 1998. The inventors of the '172 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '172 patent is now, and has been at all times since its date of issue, valid and enforceable.

29. The '451 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on May 23, 2000. The inventors of the '451 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '451 patent is now, and has been at all times since its date of issue, valid and enforceable.

30. The '592 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on November 13, 2001. The inventors of the '592 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '592 patent is now, and has been at all times since its date of issue, valid and enforceable.

31. The '946 patent, entitled "System For Transferring Information From a RF Receiver to a Processor Under Control of a Program Stored by the Processor and Method of Operation Thereof," issued on May 20, 1997. The inventors of the '946 patent are Thomas J. Campana, Jr., Michael P. Ponschke and Gary F. Thelen. The '946 patent is now, and has been at all times since its date of issue, valid and enforceable.

### 2.    NTP Won Prior Litigation Involving the Patents-in-Suit.

32. Five of the patents-in-suit were the subject of a widely publicized patent infringement litigation filed in this Court against Research-in-Motion, Ltd. on November 13, 2001, Civil Action No. 3:01CV767 (the "RIM Action").

33. In the course of the RIM Action, RIM extensively litigated the validity and enforceability of the five patents at issue, as well as the issue of RIM's infringement. The issues of infringement and validity were tried in a thirteen-day jury trial in November 2002 before the Honorable James R. Spencer.

34. The jury returned a verdict finding that RIM willfully infringed all of the asserted claims of the patents under theories of direct infringement, induced infringement and contributory infringement by making and selling Blackberry handsets, producing and selling email software, and operating the Blackberry system. The jury also found the inventions of the asserted claims were novel and non-obvious to one of ordinary skill in the art by finding that the claims were not anticipated or rendered obvious under §§ 102 and/or 103 of the Patent Act.

35. The Court awarded enhanced damages and attorney fees to NTP and ordered RIM to pay a 5.7% royalty rate on all sales of the infringing products. The Court also awarded NTP a permanent injunction. A copy of the Court's decision is attached as Exhibit I.

36. RIM unsuccessfully appealed to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), which affirmed the validity of the patents. Infringement of the

system and apparatus claims was affirmed for those claims that did not contain an "originating processor" limitation, the construction of which was altered by the Federal Circuit, and infringement of the method claims was reversed because RIM's "Relay" component was in Canada, not the US. A copy of the Federal Circuit's opinion is attached as Exhibit J.

37. After losing most of its arguments before the Federal Circuit and threatened by the notion that it would be enjoined from selling its lucrative Blackberry® products, RIM agreed to settle the lawsuit in March 2006 by licensing the right to practice NTP's cutting edge technology embodied by the claims of five of the patents-in-suit for the licensing fee of $612.5 million dollars.

38. Shortly after the widespread publication of the licensing fee paid by RIM, on September 20, 2006, Oren Tavory filed a Complaint against NTP, Inc., styled *Oren Tavory v. NTP, Inc.*, Civil Action No. 3:06CV628 (E.D. Va.) (the "Tavory Action") seeking to be named as a co-inventor of seven of the eight Campana Patents at issue here and asserting claims for copyright infringement and unjust enrichment. The action was transferred to the Richmond Division and assigned to the Honorable James R. Spencer, District Judge. The Court dismissed the unjust enrichment claim on December 26, 2006, and granted NTP's motion for summary judgment dismissing the remaining claims on July 17, 2007. Mr. Tavory filed a notice of appeal on August 16, 2007. In a decision issued on October 27, 2008 (2007 WL 2965048), the U.S. Court of Appeals for the Federal Circuit affirmed the district court's judgment in favor of NTP.

39. Currently pending before this Court are the following patent infringement actions ("the related actions") filed by NTP:

(1)     *NTP, Inc. v. Palm, Inc.* ("Palm"), filed on November 6, 2006 as Civil Action No. 2:06-CV-627 and reassigned on December 20, 2006 as Civil Action No. 3:06-CV-836;

(2)     *NTP, Inc. v. T-Mobile USA, Inc.* ("T-Mobile"), filed on September 7, 2007, Civil

Action No. 3:07-CV-548;

(3)     *NTP, Inc. v. Cellco Partnership d/b/a Verizon Wireless* ("Verizon"), filed on

September 7, 2007, Civil Action No. 3:07-CV-549;

(4)     *NTP, Inc. v. AT&T Mobility, LLC* ("AT&T"), filed on September 7, 2007, Civil

Action No. 3:07-CV-550;

(5)     *NTP, Inc. v. Sprint Nextel Corp.* ("Sprint"), filed on September 7, 2007, Civil

Action No. 3:07-CV-551; and

(6)     *NTP, Inc. v. Alltel Corp.* ("Alltel"), filed on May 19, 2008, Civil Action No.

3:08CV299.

40. Seven of the patents at issue here are also at issue in the Palm Action.  All the patents

at issue here are also at issue in each of the actions filed against T-Mobile, Verizon, AT&T,

Sprint, and Alltel.

41. The related actions were stayed pending completion of the PTO reexamination

proceedings.

### 3.     67 Claims Already Confirmed/Allowed After Reexamination.

42. After the jury verdict in the RIM action, the United States Patent and Trademark

Office ("PTO") initiated reexamination of the '670, '172, '451, '592, '472 and '946 Patents in

December 2002, and granted RIM's petitions for reexamination of the '960 and '611 Patents in

April 2003 and September 2003 respectively.  RIM subsequently filed requests for

reexamination of the other patents-in-suit.

43. All of the reexaminations eventually were terminated or went to appeal.  The Appeals

Board has rendered decisions for each of the reexaminations.  The Board has confirmed or

allowed 567 of NTP's patent claims after reexamination.  The following chart summarizes the

Board's appeal decisions of the reexaminations of the patents-in-suit:

| Patent No. | Reexam No. | Status | Claims Confirmed/Allowed by the Board |
|---|---|---|---|
| 5,436,960 | 90/006,533 | Affirmed in part | 4, 6, 11, 15, 17, 21, 23, 28, 32, 34, 38, 40, 45, 49, 51, 55, 57, 62, 67, 79 |
| | 90/006,675 | | |
| | 90/007,731 | | |
| 5,438,611 | 90/006,676 | Affirmed | |
| 5,479,472 | 90/006,677 | Affirmed in part | 10, 12, 14, 16, 18, 20, 29, 31, 33, 35, 37 |
| 5,625,670 | 90/006,491 | Affirmed in part | 567-570 |
| | 90/006,678 | | |
| | 90/007,723 | | |
| 5,631,946 | 90/006,492 | Affirmed in part | 289, 296-305, 307-309, 314-329, 333 |
| | 90/006,679 | | |
| 5,819,172 | 90/006,493 | Affirmed | |
| | 90/006,680 | | |
| | 90/007,735 | | |
| 6,067,451 | 90/006,494 | Affirmed | |
| | 90/006,681 | | |
| | 90/007,726 | | |
| 6,317,592 | 90/006,495 | Affirmed | |

44. After years of reexamination proceedings, the validity of claims 15, 32, and 34 of the '960 patent, which RIM was found to infringe at trial, have been upheld.

45. NTP has appealed the Board's decisions to the United States Court of Appeals for the Federal Circuit, as to all of NTP's patent claims that the Board did not already confirm.  The appeal is pending.

E.    **Defendants' Infringement and Notice Thereof**

46. Defendants have been, currently are, and continue to directly and/or indirectly

infringe one or more claims of the patents-in-suit by making, using, selling, offering to sell,

and/or importing into the United States one or more products and/or services that infringe the

patents-in-suit or that are specially adapted for use in infringing products.  For example,

Defendants (1) make infringing devices that are imported into the Richmond Division, offered

for sale and sold to customers in the Richmond Division for use in the Richmond Division; (2)

directly market infringing devices to customers, including customers in the Richmond Division,

via the Defendants' online Web sites, including, but not limited, to http://

www.shopamerica.htc.com; (3) knowingly communicate with customers and provide

instructions, support and services to customers located in the Richmond Division, through

telephone and online contacts for technical support of the infringing use of products and services

sold by the Defendants through Defendants' online Web sites, including, but not limited to,

www.htc.com, and through a toll-free helpline at 866-449-8358; and (4) conduct marketing,

promotion, and advertising activities for infringing products and services within the Richmond

Division and elsewhere in the United States, such activities thereby including offers to sell

directed at customers in the Richmond Division.

47. The infringing HTC products and services include, by way of example and without

limitation, the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the

AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC

Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap

smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™

smartphone, the Sprint HTC Touch Diamond ™ smartphone, the Verizon Wireless HTC

XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC

PPC6800 smartphone, the T-Mobile HTC Wing smartphone, the T-Mobile HTC Dash smartphone, the T-Mobile G1 smartphone, and the Google Nexus One smartphone.

48. Defendants indirectly infringe one or more of the claims of the patents-in-suit by actively inducing others to use, sell, and/or offer for sale products, methods, processes, services and/or systems that directly infringe one or more claims of the patents-in-suit, such as but not limited to the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap smartphone, the Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Sprint HTC Touch Diamond ™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the T-Mobile HTC Wing smartphone, the T-Mobile HTC Dash smartphone, the T-Mobile G1 smartphone, and the Google Nexus One smartphone.

49. Defendants indirectly infringe one or more of the claims of the patents-in-suit by knowingly making, using, offering to sell, selling or importing into the United States one or more material or especially adapted components of the claimed invention of the patents-in-suit for use in practicing the patented invention. By way of example, upon information and belief, Defendants make, use, sell, offer to sell, and/or import smartphones and application programs specially adapted for use in conjunction with various operating systems, such as the Window Mobile operating system and the Android operating system, such as but not limited to the Verizon HTC Imagio™ smartphone, the AT&T HTC PURE™ smartphone, the AT&T HTC Tilt™ 2 smartphone, the Verizon HTC Ozone™ smartphone, the Verizon HTC Touch Pro2 smartphone, the T-Mobile HTC Touch Pro2 smartphone, the Sprint HTC Snap smartphone, the

Verizon HTC Touch Pro™ smartphone, the Sprint HTC Touch Pro™ smartphone, the Sprint

HTC Touch Diamond ™ smartphone, the Verizon Wireless HTC XV6800 smartphone, the

Verizon Wireless HTC XV6900 smartphone, the U.S. Cellular HTC PPC6800 smartphone, the

T-Mobile HTC Wing smartphone, the T-Mobile HTC Dash smartphone, the T-Mobile G1

smartphone, and the Google Nexus One smartphone.

50. Upon information and belief, Defendants have continued to infringe the patents-in-

suit, despite their knowledge of them and in reckless disregard for NTP's patent rights.  On

information and belief, Defendants have direct knowledge from press reports and independent

investigation of the merits underlying NTP's patent rights from their knowledge of the

disposition of NTP's patent infringement suit against RIM.  Further, Defendants are aware of the

status of the pending reexaminations as such information is publicly available.  Defendants are

aware that the patents-in-suit are presumed valid and remain enforceable during the pendency of

the reexaminations.  And, on information and belief, Defendants are aware through published

press reports that the reexaminations were instituted because of political pressure on the PTO and

are without merit.  Despite their knowledge of the disposition of NTP's patent infringement suit

against RIM and the fact that RIM took a license to the patents-in-suit, Defendants chose to

market and promote their smartphone devices and, in particular, the related Email functionalities

in direct competition with RIM BlackBerry devices which were found to infringe upon, and are

currently licensed under, the patents-in-suit.  On information and belief, Defendants are also

aware of the patent infringement suits that NTP filed against T-Mobile, Verizon, and AT&T

respectively on September 7, 2007, Civil Action Nos. 3:07CV548-550, which involve the same

patents-in-suit as asserted in this Complaint.  However, Defendants continue to market, sell, and

offer to sell their infringing smartphone devices through these wireless carriers.  Defendants'

continued infringement with their present knowledge of NTP's patent rights and their relevance to Defendants' operations is reckless and willful.

51. NTP has been irreparably harmed by the Defendants' infringement of its valuable patent rights. Moreover, Defendants' unauthorized, infringing use of NTP's patented systems and methods has threatened the value of this intellectual property because Defendants' conduct results in NTP's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing the patented inventions.

52. Defendants' disregard for NTP's property rights similarly threatens NTP's relationships with its licensees and potential licensees of this intellectual property. Defendants will derive a competitive advantage over any of NTP's existing and future licensees from using NTP's patented technology without paying compensation for such use. Accordingly, unless and until Defendants' continued acts of infringement are enjoined, NTP will suffer further irreparable harm for which there is no adequate remedy at law.

**COUNT I**

**(Infringement of United States Patent No. 5,436,960)**

53. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

54. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '960 Patent.

55. Defendants make, use, sell, offer to sell and/or import into the United States for subsequent sale or use products, services, methods or processes, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '960 Patent directly or indirectly.

56. Defendants have been and continue to infringe one or more claims of the '960 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendants'

wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

57. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

**COUNT II**

**(Infringement of United States Patent No. 5,438,611)**

58. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

59. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '611 Patent.

60. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems components and/or steps that make use of systems or processors that infringe, one or more claims of the '611 Patent directly and/or indirectly.

61. Defendants have been and continue to infringe one or more claims of the '611 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

62. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

**COUNT III**

**(Infringement of United States Patent No. 5,625,670)**

63. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

64. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '670 Patent.

65. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more of the claims of the '670 Patent directly or indirectly.

66. Defendants have been and continue to infringe one or more of the claims '670 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.  NTP is entitled to recover damages adequate to compensate for the infringement.

67. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

## COUNT IV

### (Infringement of United States Patent No. 5,819,172)

68. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

69. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '172 Patent.

70. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use, products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more of the claims of the '172 Patent directly or indirectly.

- 18 -

71. Defendants have been and continue to infringe one or more of the claims of the '172 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sale and importing the patent inventions.

72. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

## COUNT V

### (Infringement of United States Patent No. 6,067,451)

73. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

74. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '451 Patent.

75. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components, and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more of the claims of the '451 Patent directly or indirectly.

76. Defendants have been and continue to infringe one or more of the claims of the '451 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

77. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

## COUNT VI

### (Infringement of United States Patent No. 6,317,592)

78. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

79. Plaintiff NTP is the assignee and lawful owner of all right, title and interest in and to the '592 Patent.

80. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more of the claims of the '592 Patent directly or indirectly.

81. Defendants have been and continue to infringe one or more of the claims of the '592 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented inventions.

82. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

## COUNT VII

### (Infringement of United States Patent No. 5,479,472)

83. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

84. Plaintiff NTP is the assignee and lawful owner of all right, title, and interest in and to the '472 Patent.

85. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ

- 20 -

systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '472 Patent directly or indirectly.

86. Defendants have been and continue to infringe one or more of the claims of the '472 Patent through the aforesaid act, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented invention.

87. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

**COUNT VIII**

**(Infringement of United States Patent No. 5,631,946)**

88. Paragraphs 1-52 are incorporated by reference as if fully restated herein.

89. Plaintiff NTP is the assignee and lawful owner of all right, title, and interest in and to the '946 Patent.

90. Defendants make, use, sell, offer to sell, and/or import into the United States for subsequent sale or use products, services, methods or processes that infringe, or which employ systems, components and/or steps that make use of systems or processes that infringe one or more claims of the '946 Patent directly or indirectly.

91. Defendants have been and continue to infringe one or more of the claims of the '946 Patent through the aforesaid act, and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused NTP to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and importing the patented invention.

- 21 -

92. NTP is entitled to recover damages adequate to compensate for the infringement and enhanced damages due to Defendants' willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, NTP prays for judgment against Defendants, and that this Court grant NTP the following relief:

A.    Adjudging and decreeing that the '960 Patent is valid and enforceable against Defendants, that the '611 Patent is valid and enforceable against Defendants, that the '670 Patent is valid and enforceable against Defendants, that the '172 Patent is valid and enforceable against Defendants, that the '592 Patent is valid and enforceable against Defendants, that the '451 Patent is valid and enforceable against Defendants, that the '472 Patent is valid and enforceable against the Defendants, and that the '946 Patent is valid and enforceable against the Defendants;

B.    Adjudging and decreeing that Defendants have infringed, directly and indirectly, the '960 Patent, the '611 Patent, the '670 Patent, the '172 Patent, the '592 Patent, the '451 Patent, the '472 Patent and the '946 Patent;

C.    Permanently enjoining Defendants, and their parents, subsidiaries, affiliates, successors and assigns, and each of their officers, directors, employees, representatives, agents and attorneys, and all persons acting in concert or active participation with or on their behalf, or within their control, from making, using, selling, offering to sale, importing, or advertising products and/or services and/or employing systems, hardware, software and/or components and/or making use of such systems or processes that infringe any of the claims of the patents-in-suit, or otherwise engaging in acts of infringement of the patents-in-suit, all as alleged herein, or alternatively if no injunction is awarded, awarding treble the royalty awarded to NTP at trial for any infringement continuing past the date of verdict until the expiration of the latest patent found to be infringed;

- 22 -

D.  Ordering an accounting, including a post-verdict accounting, to determine the damages to be awarded to NTP as a result of Defendants' infringement;

E.  Pursuant to 35 U.S.C. § 284, entering an award to NTP of such damages as it shall prove at trial against Defendants that are adequate to compensate NTP for said infringement, said damages to be no less than a reasonable royalty together with interest and costs;

F.  Assessing pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

G.  Declaring this case to be exceptional and direct Defendants to pay NTP's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285;

H.  Adjudging the infringement to be willful and awarding enhanced damages and attorneys' fees due to Defendants' willful infringement; and

I.  Granting to NTP such other, further, and different relief as may be just and proper.

**JURY DEMAND**

NTP demands a trial by jury of all matters to which it is entitled to trial by jury.

Respectfully submitted,

NTP, Inc. By Counsel

July 8, 2010

Craig T. Merritt (VSB #20281)
E-mail: cmerritt@cblaw.com
R. Braxton Hill, IV (VSB #41539)
E-mail: bhill@cblaw.com
Henry I. Willett, III (VSB #44655)
E-mail: hwillett@cblaw.com
Nichole Buck Vanderslice (VSB #42637)
E-mail: nvanderslice@cblaw.com
CHRISTIAN & BARTON, LLP
909 East Main Street, Suite 1200

- 23 -

61080366_1

Richmond, VA 23219-3095
Tel:  804-697-4128
Fax:  804-697-6128


Peter A. Sullivan (*pro hac vice*)
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY  10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Gregory M. Williams (*pro hac vice*)
**HUGHES HUBBARD & REED LLP**
1775 I Street, N.W.
Suite 600
Washington, DC  20006
Telephone:  (202) 721-4600
Facsimile:  (202) 422-4646

Attorneys for Plaintiff NTP, Inc.

1061480